**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| CART.COM, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 2:26-cv-02712-SHL-cgc |
| CONTINUUM SOLUTIONS, | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION STAYING ARBITRATION AND DENYING PLAINTIFF'S MOTION TO COMPEL ARBITRATION**

Before the Court is Defendant Continuum Solutions, LLC's Expedited Motion to Stay Arbitration and Enforce Mandatory Forum Selection Clause, filed July 21, 2026, and Plaintiff Cart.com, Inc.'s Motion to Compel Arbitration and Stay Proceedings Pending Arbitration, filed July 28. (ECF Nos. 27; 31.) As discussed below, Continnum's Motion to Stay Arbitration is **GRANTED**, based on Cart's waiver of its right to arbitrate, and Cart's Motion is **DENIED**.

## I. BACKGROUND

This case concerns two agreements between the Parties. (ECF No. 27-1 at PageID 350.) Both agreements involve the custody, storing, and overseeing of United States governmental property. (ECF No. 27-1 at PageID 350.) The first agreement, entered into April 2024 ("April Agreement"), contains an arbitration clause that Cart characterizes as mandatory. (ECF No. 31 at PageID 381.) It reads:

> Should any dispute or claim between the undersigned arise out of the relationship herein, then the parties initially agree to informally and, if necessary, formally, and privately, mediate the matter between themselves and/or, if necessary, with a mediator mutually agreed to by the parties. If the mediation effort is not successful, then the parties agree to private, final arbitration with and pursuant to the American Arbitration Association and its rules, including Commercial Arbitration rules or, if the parties can agree, with some other private arbitrator(s)

> pursuant to a mutually agreeable process. Such arbitration process and ruling shall be private and final.

(ECF 32 at PageID 393.)

The second agreement entered into October 2024 ("October Agreement"), contains a judicial forum selection clause that Continuum characterizes as mandatory. (ECF No. 27-1 at PageID 350.) It reads:

> Any suit, action, claim, or proceeding arising out of or related to this Agreement must be instituted and/or filed exclusively in United States District Court for the Western District of Tennessee or the courts of the State of Tennessee, in each case located in the city of Memphis and County of Shelby, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding.

(Id.)

The Parties pursue, among other things, breach of contract claims against each other. On June 17, Cart filed its Verified Complaint for Injunctive and All Other Relief in Shelby County Chancery Court, alleging breach of contract, tortious interference, and unjust enrichment, and seeking injunctive relief, damages, and attorneys' fees. (ECF No. 36 at PageID 454; ECF No. 1-1 at PageID 17.) Cart attached both the April and October agreements to its Complaint. (ECF No. 1-1 at PageID 40–54.) Continuum removed the case to this Court, and, on July 10, filed its Answer and affirmative defenses. (ECF Nos. 1, 22.) Also, on July 10, Cart filed a Demand for Arbitration and Statement of Claim with AAA under the April Agreement, creating parallel litigation and arbitration tracks. (ECF No. 36 at PageID 454.) On July 15, Continuum filed an amended answer and a breach of contract counterclaim against Cart, (ECF No. 23), followed by its Motion to Stay Arbitration on July 21. Cart filed its Motion to Compel Arbitration on July 28, and answered Continuum's counterclaims on August 5. (ECF No. 38.)

## II. ANALYSIS

Every day, parties enter into contracts, and their bargained-for provisions are generally enforced. Arbitration clauses, a common example of such provisions, are, likewise, generally enforced. But there are some exceptions to these rules. For instance, even mandatory arbitration clauses can be waived. See, e.g., Schnatter v. 247 Grp., LLC, 155 F.4th 543, 552 (6th Cir. 2025). Moreover, sometimes parties include competing provisions, such as an arbitration clause and a forum selection clause, one of which may override the other. Both issues are present here. And, based on these issues, one party moves to compel arbitration, the other to stay arbitration. (See ECF Nos. 27, 31.) So, to arbitrate or not to arbitrate, that is the question.

Specifically, Continuum argues that arbitration should be stayed because (1) Cart waived arbitration by bringing this lawsuit, and (2) the plain language of the October Agreement's Forum Selection Clause mandates that all claims related to the October agreement be litigated. (ECF No. 27 at PageID 344.) Cart contends that arbitration should be compelled as to all claims because (1) it did not waive its right to arbitrate by seeking injunctive relief in court, and (2) the April Agreement mandates that disputes arising under it be arbitrated.[1] (ECF No. 31 at PageID 382–83.)

Before examining the arguably conflicting language of the April and October agreements, the question of waiver must be addressed. Continuum contends that by bringing this lawsuit, Cart waived any right it may have had to arbitrate its claims under the April Agreement. (ECF No. 27 at PageID 344.) Cart's pleading of substantive claims (i.e., breach of contract), and

[1] Cart concedes that, because of the forum selection clause in the October Agreement, the Court has discretion as to whether to send disputes arising under that agreement to arbitration, but contends that disputes arising under the April Agreement must be sent to arbitration. (ECF No. 31 at PageID 383.) For efficiency's sake, Cart suggests that the disputes arising under both agreements be arbitrated. (Id.)

seeking final-merits relief, according to Continuum, was completely inconsistent with a reliance on the April Agreement's arbitration clause. (ECF No. 27 at PageID 344; ECF No. 42 at PageID 528.) However, in Cart's view, "its pursuit of litigation in Tennessee was to preserve the status quo [by seeking injunctive relief]," and its minimal litigation activity and prompt motion to compel arbitration do not constitute conduct sufficient to waive its arbitration rights under the April Agreement. (ECF No. 36 at PageID 454.) Thus, the question is whether Cart's affirmative conduct to initiate the lawsuit was completely inconsistent with any reliance on its arbitration agreement.

"Waiver . . . 'is the intentional relinquishment or abandonment of a known right.'" Morgan v. Sundance, Inc., 596 U.S. 411, 417 (2022) (quoting United States v. Olano, 507 U. S. 725, 733 (1993)). A court focuses on the actions of the person or entity who holds the right in evaluating whether it has been waived. (Id.) Specifically, a party waives an agreement to arbitrate when its "actions are completely inconsistent with any reliance on an arbitration agreement." Schwebke v. United Wholesale Mortg. LLC, 96 F.4th 971, 974 (6th Cir. 2024). Courts use a case-by-case, totality-of-the-circumstances analysis, not a bright-line rule, to determine whether a party's conduct was "completely inconsistent." Id.

The standard for evaluating waiver of mandatory arbitration clauses changed with Morgan v. Sundance, 596 U.S. at 411, which abrogated the prejudice inquiry that many courts previously considered to determine whether a party had waived its right to arbitration. Indeed, before Morgan, actual prejudice to the party opposing arbitration was a part of the waiver analysis. See Johnson Assocs. Corp. v. HL Operating Corp., 680 F.3d 713 (6th Cir. 2012) (holding that a party waives its right to arbitrate when it takes actions completely inconsistent with any reliance on an arbitration agreement, and delays its assertion to such an extent that the

opposing party incurs actual prejudice). According to Morgan, now, only the "completely inconsistent" analysis remains. 596 U.S. at 417; see also Schwebke v. United Wholesale Mortg. LLC, 96 F.4th 971, 974–75 (6th Cir. 2024). And, in Schwebke, the court "assume[d] without deciding" that analyzing a party's actions that are completely inconsistent with enforcement of an arbitration clause remains the test in this circuit. 96 F.4th at 974–75. There, although the court did not explicitly re-adopt the "completely inconsistent" standard, it continues to use it, albeit using different in terminology.[2] See, e.g., Schnatter v. 247 Grp., LLC, 155 F.4th 543, 555 (6th Cir. 2025); Kloosterman v. Metro. Hosp., 153 F.4th 501, 506 (6th Cir. 2025).

Morgan also clarified that no policy favoring arbitration exists to justify a court's prioritization of arbitration over litigation, thus eliminating the "heavy burden" to infer a party's waiver of arbitration rights. See 596 U.S. at 418–19; see also Hurley v. Deustche Bank Trust Co. Ams., 610 F.3d 334, 338 (6th Cir. 2010) (reasoning, prior to Morgan, that "because of the presumption in favor of arbitration under the Federal Arbitration Act, [] we will not lightly infer a party's waiver of its right to arbitration."). Instead, courts should analyze the totality of the circumstances on a case-by-case basis, absent any preference toward arbitration. Schwebke, 96 F.4th at 974.

Therefore, here, the correct question is whether Cart's conduct was completely inconsistent with any reliance on the April Agreement's arbitration clause according to the totality of the circumstances, without consideration of a "heavy burden" against waiver.

---

[2] In both Schnatter and Kloosterman, the Court grappled with the terminology of "waiver" versus "forfeiture" versus "default." 155 F.4th at 543; 153 F.4th at 501. It seems, since Schwebke, the Circuit has settled on framing a party's waiver of its arbitration rights as a "default" of its arbitration agreement under the FAA. 155 F.4th at 551. In any case, here, the Parties use the term "waiver," and the analysis remains unchanged—a party waives and defaults when it acts completely inconsistent with a reliance on an arbitration agreement. See Schnatter, Id. at 551, n.3 (citing Kloosterman, 153 F.4th at 501) (discussing the shift in terminology as to arbitration waiver cases).

In Continuum's view, Cart's initiation of the lawsuit as the plaintiff,[3] pleading substantive claims and seeking final-merits relief, is conduct completely inconsistent with reliance on the arbitration clause and thus sufficient to waive any right it had to arbitration.[4] (ECF No. 48 at PageID 630.) But Cart contends that its request for emergency relief is not enough to show waiver. (ECF No. 36 at PageID 463.)

O'Meara[5] demonstrates what the Circuit confirmed in Schwebke: whether the party seeking to compel arbitration is the plaintiff or the defendant, a court must consider case-specific facts that bear on whether the conduct of the party seeking to compel arbitration is "completely inconsistent" with the assertion of that right, in the totality. See, e.g., Schwebke, 96 F.4th at 976 (citing Johnson, 680 F.3d at 719). Here, those conduct-specific facts include: (1) Cart's knowledge of the April Agreement; (2) the length of the litigation between the Complaint and Cart's Motion to Compel; and (3) the language and construction of the Complaint.

[3] Cart's initiation of litigation before arbitration is unusual. Indeed, most cases regarding the "completely inconsistent" standard analyze whether a defendants' actions were inconsistent with reliance on arbitration rights. See Schebke, 96 F.4th at 971 (analyzing a defendants' waiver of arbitration rights); Worldsource Coil Coating v. McGraw Constr. Co., 946 F.2d 473, 482–83 (6th Cir. 1991) (same).

[4] Continuum contends that Lee Construction, LLC v. Bratton, No. 1:22-cv-196, U.S. Dist. LEXIS 159874 (E.D. Tenn. July 28, 2023), clarified that "Morgan abrogated both parts [prejudice and the complete inconsistency standard] of the Sixth Circuit's test. (ECF No. 42 at PageID 527.) But Schwebke and subsequent waiver/default cases use the "completely inconsistent" standard, not the "clear and unequivocal" standard that the Lee Construction court predicted the Circuit would adopt post-Morgan, and that now-incorrect standard led that district court to determine that the plaintiff's initial filing alone was sufficient to constitute waiver. Thus, Lee Construction's standard and analysis are inapplicable here.

[5] According to Cart, O'Meara v. Fidelity Invs, No. 20-cv-2838-JPM-cgc, U.S. Dist. LEXIS 25034 (W.D. Tenn. Feb. 10, 2021), another pre-Schwebke case, proves that the initiation of a lawsuit does not constitute a waiver. (ECF No. 50 at PageID 646.) But that court did not conclude that a plaintiff's filing of a complaint never constitutes a waiver. Instead, it examined the plaintiff's conduct using a totality-of-the-circumstances analysis. See O'Meara, U.S. Dist. LEXIS 25034, at *10.

First, when it filed this litigation, Cart had knowledge of the April Agreement's arbitration clause, as a commercial entity engaged in its business based on the contract, unlike the plaintiff in O'Meara, to whom Cart compares itself. O'Meara was a customer of the defendant banks, who suffered from "significant incompetency issues, such as memory problems and dementia-type behavior," and his son brought the lawsuit on his behalf. Compl. at ¶ 13, O'Meara, U.S. Dist. LEXIS 25034. When the complaint was filed, O'Meara had no knowledge of the arbitration clause. See U.S., Dist. LEXIS 25034, at *10 ("Plaintiff had asked Defendants to disclose the arbitration agreements so he could determine whether valid grounds existed to oppose arbitration."). O'Meara's contracts with the banks were standard account agreements—not negotiated business-to-business agreements as is the case here. See id. There, the court held that there was no waiver because, despite the fact that the complaint did not mention arbitration, once he discovered the arbitration agreements, the plaintiff mentioned arbitration and his intent to investigate the validity and enforceability of the agreements in "every [other] filing in [the] case." Id.

In contrast, here, Cart is a sophisticated company engaged in business with another sophisticated company, who negotiated and had access to the agreements all along. Despite Cart's knowledge of the April Agreement's arbitration clause, it still decided to file the Complaint and seek final-merits relief in a judicial forum. (See ECF No. 1-1.) The differences between the cases are significant, and weigh in favor of a finding that Cart acted completely inconsistent with the April Agreement's arbitration clause.

Second, as for the timeframe between the initiation of litigation and the motion to compel arbitration, Cart argues that its minimal litigation activity and prompt motion are consistent with a reliance on its arbitration rights under the April Agreement. (ECF No. 36 at PageID 454.)

Cart relies heavily on the short timeline—forty-one days from Complaint to Motion to Compel—to demonstrate its arbitration-reliant conduct, citing several cases where the parties unsuccessfully sought to compel arbitration after long periods of litigation. (See ECF No. 36 at PageID 466–67.) But Continuum responds that Cart's decision to file the Complaint in the first place constitutes a waiver, arguing that Cart changed course only after Continuum removed the case to federal court. (ECF No. 42 PageID 533.) While Cart's decision to file the Complaint is a fact that must be weighed in the totality, so must Cart's minimal litigation activity and prompt motion to compel.

Generally, the longer the wait, the more likely the waiver. To be sure, courts have frequently discussed a party's extended litigation as a fact to consider in the waiver analysis. For example, in Schwebke, the court held that the defendant's extended litigation activity, including participating in discovery, constituted actions completely inconsistent with any reliance on an arbitration agreement. See 96 F.4th at 973–75 (finding waiver of arbitration after approximately seven months of litigation where the parties engaged in extensive discovery, including a deposition deadline extension); Johnson Assocs., 680 F.3d at 718 (finding waiver of arbitration after eight months of litigation in which the moving party actively scheduled discovery, including depositions); O'Meara, 2021 U.S., Dist. LEXIS 25034, at *3–5 (finding no waiver after approximately three months of litigation). Indeed, if Cart were the defendant, its quick motion to compel arbitration and minimal litigation activity would likely be insufficient to show waiver. But, again, Cart is the plaintiff, who filed a complaint "seeking damages and [final-merits] relief." (ECF No. 48 at PageID 630.) Thus, the fact that Cart initiated litigation before seeking arbitration is significant.

Third, despite its argument to the contrary, Cart seeks more than "interim injunctive relief

to preserve the status quo" in its Complaint. (ECF No. 36 at PageID 464.) Rather, it seeks damages, and alleges substantive claims—including breach of contract, tortious interference, and unjust enrichment—demonstrating a scope of the litigation beyond its emergency request for injunctive relief. (ECF No. 1-1.) Looking at the Complaint, there is no question that, despite the arbitration clause, Cart placed all of its claims in a judicial forum.

Although a complaint is neither a dispositive motion, nor a counterclaim, it affirmatively seeks relief from a court, and sets the scope of the litigation. The Schebke court emphasized that responsive conduct, such as filing an answer, is less relevant to the waiver analysis than affirmative conduct, such as filing a dispositive motion or a permissive counterclaim, reasoning that affirmative conduct "asks the district court to exercise power and decide an issue," and demonstrates a party's willfulness to "expand[] the scope of the litigation." 96 F.4th at 975–76. Thus, affirmative conduct is more indicative of a party's waiver of an arbitration clause than responsive conduct. See id.

Further, Cart's language and the construction of the Complaint is significant to the analysis. Cart not only placed its claims in a judicial forum, it seeks adjudication and final relief on the merits of those claims. (See id.) Cart argues that it "expressly noted that another dispute-resolution procedure might govern," apparently arguing that this language was intended to preserve arbitration. (See ECF No. 50 at PageID 646, n.4 (referring to paragraph twenty-two of the Complaint, ECF No. 1-1 at PageID 20–21, which states "[t]o the extent Continuum contends that any dispute-resolution procedure applies to any part of the parties' relationship, Cart seeks immediate interim equitable relief to preserve the status quo . . . .").) However, according to Continuum, that language was only a preemptive argument in support of its TRO request in case Continuum sought "some other 'dispute resolution' (presumably arbitration or mediation).""

(ECF No. 42 at PageID 534.) Indeed, Cart's language in paragraph twenty-two is vague, and the rest of the Complaint diminishes Cart's argument that it included paragraph twenty-two to preserve arbitration. Instead, Cart could have, alongside its request for injunctive relief, crafted its Complaint to make clear that arbitration was preserved, and that it did not intend for the Court to adjudicate anything other than interim relief. But Cart sought final relief on the merits, and placed adjudication of its claims squarely with the Court.

Finally, the fact that Cart seeks relief based on the October Agreement's forum selection clause provides additional support to conclude that Cart's conduct is "completely inconsistent" with reliance on the April Agreement's arbitration clause. (See ECF 1-1 at PageID 20 ("Venue is also proper because [the October Agreement] provides for disputes to be filed in courts located in Shelby County, Tennessee.").) Thus, the language of the Complaint indicates that Cart fully decided on a forum, waiving any right that it may have had to arbitration. Cart cannot retract that decision now.

## III. CONCLUSION

Because Cart knew about the arbitration agreement, initiated this litigation, and constructed its Complaint in such a way that it must be read to present all claims to the Court for final adjudication, the totality of the circumstances demonstrate that Cart's conduct was completely inconsistent with reliance on the April Agreement's arbitration clause. Thus, Cart's Motion to Compel Arbitration is **DENIED**, and Continuum's Motion to Stay Arbitration is **GRANTED**.

**IT IS SO ORDERED,** this 7th day of October, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE